555 P.2d 1113

Gerald D. SELLERS, Doris Sellers, Danny Sellers, a minor, Timothy Sellers, a minor, Barbara Sellers, a minor, by and through their Guardian ad Litem, Gerald D. Sellers, Appellants,

v.

ALLSTATE INSURANCE COMPANY, Appellee.

No. 12562–PR.

Supreme Court of Arizona,

In Banc.

Sept. 9, 1976.

Matz & Jurkowitz by Theodore Matz, Phoenix, for appellants.

Robbins, Green, O'Grady & Abbuhl by Robert H. Green, Harriet C. Babbitt, Phoenix, for appellee.

STRUCKMEYER, Vice Chief Justice.

This is an action brought by George and Doris Sellers for themselves and on behalf of their minor children against Jerry Collison to recover damages suffered in an automobile accident. After trial in the Superior Court, a judgment was entered for $830,000 in the Sellers' favor. They caused a writ of garnishment to be served on appellee Allstate Insurance Company. After a tender of issue in which Allstate denied any liability, a summary judgment was granted to Allstate and the Sellers appealed. The Court of Appeals affirmed. We accepted review. Opinion of the Court of Appeals, 25 Ariz.App. 482, 544 P.2d 699 (1976) vacated and judgment of the Superior Court reversed.

Jerry and Evelyn Collison married approximately two months prior to the automobile accident out of which this litigation arose. At the time of the accident, Jerry Collison was driving a 1957 Cadillac which he had owned prior to marriage. Evelyn Collison owned a 1964 Chrysler au-

tomobile, insured by Allstate Insurance Company, which was in a garage undergoing repairs on the day of the accident. The accident occurred when Jerry Collison was driving the Cadillac on his way to the Lowboy Lounge in Phoenix, Arizona, to have a beer and cash a check. It was his intention after leaving the lounge to pick up his wife at her place of work and drive her home.

The Sellers' position is that the policy of insurance issued by Allstate Insurance Company to Evelyn Collison covering the Chrysler automobile also covered Jerry Collison and the Cadillac at the time the accident happened.

The Allstate policy provides:

"The following persons are insured

1. The named insured with respect to the owned * * * automobile; * * *."

It defines certain of the relevant terms in this manner:

" 'named insured' means the individual named on the Supplement Page, and his spouse if a resident of the same household; * * *

'owned automobile' means the vehicle described on the Supplement Page, and, as defined herein, any replacement automobile, any additional automobile, any temporary substitute automobile, * * * owned by the named insured;

'replacement automobile' means any other private passenger or utility automobile of which the named insured acquires ownership, provided it replaces the owned automobile;

'additional automobile' means an additional private passenger or utility automobile of which the named insured acquires ownership, provided notice of its delivery be given to Allstate within the policy term then current, or if delivery is within 30 days before the end of such term, then within 30 days after delivery;

'temporary substitute automobile' means any automobile, including a trailer, while

temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; * * *"

It is evident that Allstate's policy covered Jerry Collison as Evelyn Collison's husband while he was driving her Chrysler *and* any replacement, additional or temporary substitute automobile within the definitions of the policy.

■ The Sellers urge that the Cadillac was an automobile temporarily substituted for Evelyn Collison's Chrysler.

The Arizona Court of Appeals has previously explained and defined the significance of substitute automobile provisions in insurance policies:

"The purpose of the substitution provision is to extend coverage temporarily and automatically, without the payment of an additional premium, to the insured to protect him when he uses a vehicle not specified in the policy in place of the specified vehicle he intended normally to use but did not because of its withdrawal from use for a reason stated in the policy. *Lloyds America v. Ferguson*, 116 F.2d 920 (5th Cir. 1941); *Hemphill v. Home Ins. Co.*, 121 Ga.App. 323, 174 S. E.2d 251 (1970); *Lewis v. Bradley*, 7 Wis.2d 586, 97 N.W.2d 408 (1959). A substitute automobile within the meaning of the policy is one actually but only temporarily used in place of the specified automobile, i. e., for the same use the insured car would have been used except for its withdrawal from all normal use and while such withdrawal is because of its breakdown, repair, servicing, loss or destruction. In other words, it is a vehicle put in place of another." *Fulton v. Woodford*, 17 Ariz.App. 490, 498 P.2d 564 (1972).

In the present case, on weekdays Evelyn Collison normally drove to and from work in the Chrysler automobile. The accident occurred on Tuesday. If Jerry Collison had driven his wife home in his Cadillac after she finished work, in a sense it would have been a substitute for her Chrysler because it would have furnished her transportation. But in actual practice, at the time when the accident occurred Jerry Collison in driving to the Lowboy Lounge was using the Cadillac on a personal mission of his own and for his personal convenience. Since Jerry Collison normally drove the Cadillac, he was not using it as a temporary substitute for his wife's Chrysler in trips for his personal convenience. Cf. *Strozewski v. American Family Mutual Insurance Co.*, 46 Wis.2d 123, 174 N.W.2d 550 (1970).

■ The Sellers argue that the "additional automobile" clause which is very similar in effect to the newly acquired automobile clause, the so-called "automatic insurance" clause, provides a legal basis for coverage of the accident. See 12 Couch on Insurance 2d § 45:173 (1964). It is their position that the additional automobile clause applies because Evelyn Collison acquired an ownership interest in the Cadillac automobile under Arizona's community property laws. While ownership is not defined in the policy, the ownership of such additional automobile by the named insured means such ownership as the ordinary person would contemplate by that term. *Hopkins v. Martinez*, 73 N.M. 275, 387 P.2d 852 (1963). Equitable ownership is included:

"For the purpose of coverage, it is sufficient that the insured had equitable ownership of the designated vehicle, using the term 'equitable owner' in the sense of one having a rightful actual dominion and control over the automobile, although lacking the legal title thereto." 12 Couch on Insurance 2d § 45:177 (1964).

■ In Arizona, the status of property as to whether community or separate is established at the time of marriage. Assets which are the separate property of one spouse before the marriage retain that character after the marriage, but can be al-

tered by an agreement between the spouses, *Armer v. Armer*, 105 Ariz. 284, 463 P.2d 818 (1970), or by gift of one to the other, *Blaine v. Blaine*, 63 Ariz. 100, 159 P.2d 786 (1945); *Lincoln Fire Insurance Co. v. Barnes*, 53 Ariz. 264, 88 P.2d 533 (1939). A married couple is free to determine what the status of their property is to be. *Rodieck v. Rodieck*, 9 Ariz.App. 213, 450 P.2d 725 (1969).

Jerry Collison testified in a deposition on December 30, 1971:

"Q. And you previously testified, as I recall at the trial in this matter, that after you married her you considered the Cadillac to have belonged to both you and her, is that right?

A. Yes.

\* \* \* \* \* \*

Q. After your marriage and before the accident you had spent around $400 community funds to repair this Cadillac to go on a trip, is that right?

A. About two weeks prior to the accident."

Evelyn Collison testified in her deposition taken December 30, 1971:

"Q. You mentioned repairs on the Chrysler and did you have any repairs on any other automobiles after you were married and before the time of the accident?

A. We had about $400 repair bill on the Cadillac. We were getting ready to go on vacation, new tires, complete engine overhaul.

Q. Was that money, ma'am, once again from the community funds or community slush fund as you have described it?

A. Well, Jerry didn't hardly have $400 in his own personal account.

Q. Well, what I'm driving at is is this money that you earned or he earned while you were married?

A. That was our money, Mr. Matz, I mean, you know.

Q. But it was earned while you were married?

A. Yes."

█ █ We think there is a factual question as to whether the 1957 Cadillac brought by Jerry Collison to the marriage retained that status. A motion for summary judgment is not designed to resolve factual issues. If there is the slightest doubt as to the facts, summary judgment must be denied. *City of Phoenix v. Space Data Corporation*, 111 Ariz. 528, 534 P.2d 428 (1975). Here the trier of fact could possibly find that the Cadillac automobile was intended by Jerry Collison to be part of the community estate. For the foregoing reason, we think a factual issue was raised and it was error for the lower court to grant summary judgment to Allstate.

Allstate relies on *Taylor v. Aetna Casualty and Surety Co.* (La.App.), 185 So.2d 41 (1966) and *Boyd v. U.S. Fidelity and Guaranty Co.* (Fla.), 256 So.2d 1 (1971), but those cases are not similar to the present case. In each, the policy of insurance provided coverage for a newly acquired automobile if it replaced an owned automobile. Such clauses are common to automobile insurance policies. *See* 12 Couch on Insurance 2d §§ 45:182, 45:209 to 45:214 (1964); Anno. 34 A.L.R.2d 936–947 (1954). However, in the insurance policy being construed there is no requirement that an owned automobile be replaced. The policy specifically speaks of an "additional" vehicle and provides for an adjusted preimum should one be acquired.

█ The Sellers also contend that under the doctrine of estoppel Allstate's insurance covered this risk. They point to certain conversations with the Allstate claims representative after the accident to the effect that Allstate would provide excess coverage above the insurance carried on the Cadillac. However, the overwhelming weight of authority holds that the doctrine of estoppel is not available to bring within the coverage of an insurance policy risks not covered by its terms. *Connolly v.*

**423**

*Great Basin Insurance Co.,* 6 Ariz.App. 280, 431 P.2d 921 (1967). Moreover, the instant case lacks an essential element of estoppel. As a minimum, reliance to the prejudice of the Collisons must be shown. *See Hall v. Motorists Insurance Corp.,* 109 Ariz. 334, 509 P.2d 604 (1973). None is shown or even asserted.

The judgment of the court below is reversed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.